# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLATYPUS WEAR, INC., <br><br> Plaintiff, <br><br> v. <br><br> BAD BOY EUROPE LTD., *et al.*, <br><br> Defendants. | Case No. 16-cv-02751-BAS-DHB <br><br> **ORDER:** <br><br> **(1) DENYING PLAINTIFF PLATYPUS WEAR, INC.'S MOTION TO STRIKE (ECF No. 44); AND** <br><br> **(2) DENYING DEFENDANT JOHN PAUL GARDNER'S MOTION TO DISMISS (ECF No. 38)** |

This action arises out of the business relationship between Plaintiff Platypus Wear, Inc. and Defendants Bad Boy Europe LTD. ("BBE"), Deep Blue Sports LTD. ("Deep Blue Sports"), and John Paul Gardner. (Compl., ECF No. 1.) After Plaintiff commenced this action, Gardner, proceeding pro se, wrote an ex parte letter to the Court contesting the sufficiency of service and personal jurisdiction. (ECF No. 13.) The Court construed this letter as a motion to dismiss the complaint for lack of personal jurisdiction and insufficient service of process under Federal Rules of Civil Procedure 12. (Mot., ECF No. 38; *see* ECF No. 37 at 2.) Plaintiff opposed the motion.

(Opp'n, ECF No. 40.) In response, Gardner sent a second letter, which the Court construes as his reply. (Reply, ECF No. 43.) Plaintiff then filed a motion to strike the Reply. (ECF No. 44.)

The Court finds these motions suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the following reasons, the Court **DENIES** Plaintiff's motion to strike the reply (ECF No. 44) and **DENIES** Gardner's motion to dismiss (ECF No. 38).

I. **BACKGROUND**

In July 2010, Plaintiff and Deep Blue Sports executed a license agreement that enabled Deep Blue Sports to sell products bearing a trademark owned by Plaintiff to customers in the United Kingdom ("2010 Agreement"). (Compl. ¶ 20.) The 2010 Agreement included a California choice of law provision. (*Id.*) The provision also stated that "the parties agree to subject to the non-exclusive jurisdiction of the Courts of San Diego County in California." (*Id.*) In October 2013, Plaintiff, Deep Blue Sports, and BBE added an addendum to the existing agreement ("2013 Addendum"). (*Id.* ¶ 21.) The 2013 Addendum included a provision assigning Deep Blue Sports's rights and liabilities to BBE. (*Id.*) Plaintiff alleges that Deep Blue Sports continued to operate as a licensee despite the 2013 Addendum. (*Id.*) The 2010 Agreement and the 2013 Addendum are collectively referred to as the "License Agreement."

In early 2015, Plaintiff performed an audit and determined that BBE and Deep Blue Sports owed Plaintiff over $300,000 in unpaid royalties and other commitments under the License Agreement. (Compl. ¶ 23.) The License Agreement was set to expire on June 30th 2015. (*Id.*) Once the License Agreement expired, BBE's right to sell any inventory bearing Plaintiff's mark would also expire after ninety days. (*Id.* ¶ 25.) Plaintiff alleges that, as the expiration date approached, it became apparent to BBE that it was going to be left with hundreds of thousands of dollars of inventory

that it would soon be unable to sell. (*Id.*) In order to avoid this loss, Gardner traveled to San Diego, California to renegotiate the terms of the 2013 Agreement. (*Id.* ¶ 26.)

In July 2015, Plaintiff and Gardner began to negotiate terms of a second addendum ("2015 Addendum"). (Compl. ¶ 29.) Upon execution of the 2015 Addendum in October, Plaintiff agreed to (1) waive monies owed to Plaintiff by BBE and Deep Blue Sports through the expiration of the License Agreement, (2) release Deep Blue Sports of liability, and (3) assist BBE in recouping costs of unsold inventory. (*Id.* ¶ 29.) Gardner executed the 2015 Addendum on behalf of Deep Blue Sports and BBE in his capacity as the director of both companies.

Six days after executing the Second Addendum, Gardner formally resigned from his positions of director and officer of BBE. (*Id.* ¶ 43.) Plaintiff alleges that even after his resignation, Gardner continued to represent himself as BBE's managing director and CEO. (*Id.*)

Plaintiff further alleges that, during negotiations with Gardner, it was "ignorant of the material facts" regarding BBE's financial stability. (Compl. ¶ 28.) These allegations include that BBE was not adequately capitalized and that Gardner was planning to transfer all of BBE's assets (including unsold inventory of licensed products) to Deep Blue Sports and then liquidate BBE to escape its financial obligations. (*Id.*) Plaintiff also alleges that during the process of negotiating the 2015 Addendum, Gardner transferred BBE's assets to Deep Blue Sports, but represented to Plaintiff that the assets belonged to BBE. (*Id.* ¶ 34.)

After receiving a notice of default from Plaintiff in December of 2015, Gardner contacted Plaintiff and allegedly promised to fulfill all of the obligations under the License Agreement including paying any monies owed. (Compl. ¶ 50.) Because he had formally resigned from his positions with BBE in November, Plaintiff alleges that Gardner must have intended to promise that either he, personally, or Deep Blue Sports would fulfill the obligations. (*Id.*) Additionally, Plaintiff claims that, although all agreements were terminated by January 2016, Deep Blue Sports and Gardner

continued to sell apparel bearing Plaintiff's registered trademarks without any license or permission, and without paying Plaintiff royalties. (*Id.* ¶ 60.)

Lastly, Plaintiff asserts that, at all times, Gardner was the sole owner and managing director of both BBE and Deep Blue Sports and that the companies shared the same office location, employees, officers, directors, and attorneys, and engaged in the same business (selling martial arts equipment and apparel). (Compl. ¶ 74.) Plaintiff asserts that Gardner freely transferred assets in the form of licensed products between the two companies without adequate consideration and that BBE sold products bearing Plaintiff's trademarks on a website registered to Deep Blue Sports and Gardner. (*Id.*) Plaintiff claims that Gardner operated BBE as a mere shell company without capital assets, stock, or stockholders.

Plaintiff filed this action on November 7, 2016 alleging breach of contract, fraud and deceit, unjust enrichment, and trademark infringement arising out of the License Agreement and related addendums. (Compl. ¶¶ 20-30.) In his motion to dismiss, Gardner asserts that Plaintiff never served him with any documents. (Mot. at 1.) Gardner also argues that the Court lacks personal jurisdiction over him because he never interacted with Plaintiff in his individual capacity. Instead, he asserts that any interaction he had with Plaintiff was as an agent/representative of a BBE or Deep Blue Sports. (*Id.*) Plaintiff opposed Gardner's Motion to Dismiss (ECF No. 40) and moved to strike Gardner's Reply (ECF No. 44).

## II. MOTION TO STRIKE

On May 9, 2018, Gardner sent a letter to the Court, responding to Plaintiff's opposition to his motion to dismiss. (ECF No. 43.) The Court accepted this letter as Gardner's Reply. (*Id.*) Plaintiff now moves to strike Gardner's Reply, arguing that the Reply contains new purported facts without any evidentiary support. (ECF No. 44 at 1-2.)

According to the Ninth Circuit, "[p]arties cannot raise a new issue for the first time in their reply brief." *State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990). Reply papers should be limited to matters raised in the opposition papers. *See Clark v. County of Tulare*, 755 F. Supp. 2d 1075, 1090 (E.D. Cal. 2010). "[I]t is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than presented in the moving papers." *Id.* Accordingly, a district court does not need to consider arguments raised for the first time on reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *see also U.S. v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("Arguments not raised by a party in its opening brief are deemed waived.").

Given Gardner's pro se status, the Court does not find that striking the Reply in its entirety is warranted. Though the Court recognizes that Gardner fails to provide support for his factual allegations, the Court finds that Gardner's arguments were within the scope of the opposition papers. Moreover, Gardner raises the issue of personal jurisdiction in his motion to dismiss, and, when liberally construed, his Reply merely expounds on this argument. *See Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003) ("Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints.").

Plaintiff also argues that the Court should strike the Reply because Gardner's factual allegations are unsubstantiated. This argument ignores the standard that the Court must apply for a motion to dismiss for lack of personal jurisdiction. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (finding that a plaintiff need only make a prima facie showing of personal jurisdiction to survive a Rule 12(b)(2) motion). To defeat a prima facie showing of personal jurisdiction, Garnder would have to produce actual evidence to dispute Plaintiff's allegations, and the Court is limited in considering such evidence. *Id.* Because the Reply only states Gardner's assertions and does not constitute evidence, Plaintiff's request to strike is unnecessary.

Accordingly, the Court **DENIES AS MOOT** Plaintiff's Motion to Strike. (ECF No. 44.)

## III. LEGAL STANDARD

### A. Motion to Dismiss for Insufficient Service of Process

The Supreme Court has set forth a constitutional minimum for sufficient service of process. To ensure due process, notice of an action must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Greene v. Lindsey*, 456 U.S. 444, 449-50 (1982) (quoting *Mullane v. Central Hanover Bank and Trust*, 339 U.S. 306, 314 (1950)). Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Federal Rule of Civil Procedure 4. *See Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). Under Rule 4(f), a plaintiff can serve an individual abroad by one of three means, the first of which is service authorized by an internationally agreed means such as the Hague Convention. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). The Hague Convention requires signatory countries to establish a Central Authority to receive requests for service of documents from other countries, and to serve those documents by methods compatible with the internal laws of the receiving state. *See id.* at 698-99. Once the Central Authority has received documents in compliance with applicable requirements, the Hague Convention affirmatively requires the Central Authority to effect service in its country. *See Brockmeyer*, 383 F.3d at 804 (citing Hague Convention, arts. 4-5, Nov. 4, 1965, 20 U.S.T. 361).

Constitutional due process does not require proof that a defendant actually receives notice. *See Greene*, 456 U.S. at 449-50. Rather, service of process is valid

where an individual is served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." *Lidas, Inc. v. United States*, 238 F.3d 1076, 1084 (9th Cir. 2001) (quoting Fed. R. Civ. P. 4(f)(1)). "A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *SEC v. Internet Sols. for Bus., Inc.*, 509 F.3d 1161, 1167 (9th Cir. 2007). The burden is on the defendant to show that he or she was not served with process. *See id.*

### B. Motion to Dismiss for Lack of Personal Jurisdiction

When the parties dispute whether personal jurisdiction over a foreign defendant is proper, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rio Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). In general, "personal jurisdiction over a defendant is proper if it is permitted by a [state] long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Both the California and federal long-arm statutes require compliance with due-process requirements. *See Pebble Beach*, 453 F.3d at 1155; *see also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 150, 161 (9th Cir. 2007).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "However, this demonstration requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Id.* (quoting *Doe*, 248 F.3d at 922). The Court must resolve disputed jurisdictional facts in the plaintiff's favor, taking the allegations in the plaintiff's complaint as true. *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996); *see also Doe*,

248 F.3d at 922 ("[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.").

If the defendant adduces evidence controverting the allegations in the complaint, however, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "Conflicts between [the] parties over statements contained in the affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see AT&T*, 94 F.3d at 588 ("[C]onflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.")

IV. ANALYSIS

A. Request to Dismiss for Insufficient Service of Process

The Court construes Gardner's assertion that he was never served with any documents as a defense of insufficient service of process pursuant to Rule 12(b)(5). (Mot. at 1.) Plaintiff claims that it effected service on Gardner, a U.K. resident, in accordance with the Hague Convention as permitted by Rule 4(f)(1). (Opp'n at 10.)

Here, Plaintiff provided a signed return of service from the U.K. Central Authority ("Certificate") that constitutes "prima facie evidence of valid service that can be overcome only by strong and convincing evidence." *See Internet Sols.*, 509 F.3d at 1167. In her sworn declaration, Plaintiff's counsel affirms that Gardner provided his mailing address to her in an email. (King Decl. at 2, ECF No. 40-1.) The email shows that, as of September 2016, Gardner's mailing address was 15 Rothbury Terrace in Newcastle upon Tyne. (ECF No. 40-9 at Ex. B.) According to the Certificate, "documents were served by posting them through the defendant's letterbox" at his Rothbury Terrace address. (ECF No. 40-10 at Ex. C.) This method

of service is in accordance with Rule 6.3(1)(c) of the Civil Procedure Rules of England and Wales, and is thus valid under the Hague Convention. *See* Hague Convention, art. 5; (*Id.*)

Additionally, Gardner does not provide any evidence establishing that he was not served with process. Even construing Gardner's letter as a sworn affidavit, the mere statement that "I have not been served any documents" does not meet the burden of clear and convincing evidence establishing that service of process was insufficient. (Mot. at 1.) Moreover, Gardner does not contend that the Rothbury Terrace address was an incorrect address for him on the date of service. Additionally, though Gardner alleges he did not receive any documents, due process does not require that the plaintiff prove the defendant received actual notice. *See Internet Sols.* 509 F.3d at 1167. Instead, Plaintiff only needs to show that it used a method of service reasonably calculated to give notice to Gardener in accordance with Rule 4, which the Court finds that it did. *See Lidas, Inc.*, 238 F.3d at 1084.

Because Plaintiff made a prima facie showing that service was valid under Rule 4, and Gardner did not provide sufficient evidence to dispute this, the Court denies Gardner's request to dismiss this action for insufficient service.

### B. Request to Dismiss for Lack of Personal Jurisdiction

Gardner asserts that the Court lacks personal jurisdiction over him. (Mot. at 1.) In response, Plaintiff argues that the Court can exercise personal jurisdiction over Gardner for two reasons: (1) specific personal jurisdiction exists for the intentional tort claims because Gardner purposefully directed his tortious conduct toward a California resident, and (2) personal jurisdiction exists for the contract claims because Gardner is the alter ego of companies that consented to jurisdiction in California. (Opp'n at 12-13.) The Court discusses each issue in turn.

### 1. Specific Personal Jurisdiction Over Intentional Tort Claims

First, Plaintiff argues that the Court has personal jurisdiction over Gardner for intentional tort claims because these claims arise out of activities that Gardner purposefully directed at California. (Opp'n at 14.)

Specific jurisdiction allows a court to exercise jurisdiction over a defendant whose forum-related activities gave rise to the action before the court. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to a court's specific personal jurisdiction. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). For claims arising out of intentional torts, specific jurisdiction exists when (1) the defendant purposefully directed his activities toward the forum, (2) the plaintiff's claims arise out of the defendant's forum-related activities, and (3) it is reasonable for the court to assert jurisdiction over the defendant. *See Schwarzenegger*, 374 F.3d at 802; *see also Ziegler*, 64 F.3d at 473 (noting that courts apply different purposeful availment tests to contract and tort cases).

To assess the first prong of the specific jurisdiction framework, the Court uses the "effects test" and determines whether the defendant allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). Next, to assess the second prong of the framework, the Court uses a "but for" test to determine whether the plaintiff's claims arise out of the defendant's forum-related activities. *See Ballard*, 65 F.3d at 1500 (explaining that the question is "but for" defendants contacts with the forum, would a plaintiff's claims against a defendant have arisen). If the plaintiff shows that the first two prongs are met, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Schwarzenegger*, 374 F.3d at 802. "If any of the three requirements is not satisfied,

jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155.

In this case, Plaintiff alleges that the first prong of the specific jurisdiction framework is met because Gardner purposefully directed his activities toward California. (Opp'n at 14.) Plaintiff claims that Gardner attempted to defraud a California resident, and thus expressly aimed his intentional fraudulent acts at California. *See Dole*, 303 F.3d at 1111. Plaintiff alleges that Gardner repeatedly visited Plaintiff's San Diego office, including to negotiate the 2015 Addendum, which he allegedly used to implement his fraudulent scheme. (*See* Compl. ¶ 26.) Plaintiff contends that, during these negotiations, Gardner intentionally misrepresented the financial status of his company, BBE, and withheld material information, such as his alleged plan to transfer assets out of BBE and liquidate the company. (*Id.* ¶ 41.) Plaintiff argues further that Gardner fraudulently induced Plaintiff to agree to terms that it would not have agreed to had it known these material facts. (*Id.* ¶ 42.) Additionally, Plaintiff claims that Gardner knew his fraud would cause harm in California, and that Gardner caused such harm when Plaintiff allegedly lost several hundreds of thousands of dollars in California—its principal place of business. (Opp'n at 15.); *see Dole*, 303 F.3d at 1113 ("The places where a corporation suffers economic harm include its principal place of business.").

Taking the allegations in Plaintiff's complaint as true, the Court finds that Plaintiff satisfies the first prong of the specific jurisdiction under the "effects test." Plaintiff makes a prima facie showing that Gardner committed intentional acts of fraud, that the acts where targeted at Plaintiff in California, and that Gardner knew that the economic loss would be suffered in California. *See Dole,* 303 F.3d at 1111.

For the second prong, Plaintiff alleges that its tort claims arise out of Gardner's forum-related activities. Specifically, Plaintiff alleges that if it were not for Gardner withholding material information during the contact negotiations in California, Plaintiff would not have suffered harm. (Opp'n at 16.) In other words, but-for

Gardner's forum-related activities in California, Plaintiff's claims would not have arisen. (*See id.*); *Ballard*, 65 F. 3d at 1500. The Court agrees with Plaintiff for the purposes of jurisdiction, and finds that Plaintiff establishes the second prong. (*Id.*)

Next, because Plaintiff's allegations support the first two prongs of specific personal jurisdiction over Gardner, Gardner must show that the Court exercising personal jurisdiction over him would be unreasonable. *See Dole,* 303 F.3d at 1111. Gardner has not produced any evidence controverting the allegations in the complaint nor has he made a compelling case that asserting jurisdiction would be unreasonable. *See Schwarzenegger*, 374 F.3d at 802. Although Gardner contests having any fraudulent intent sufficient to characterize his actions as tortious, he has not produced sufficient evidence to support this contention. Even construing Gardner's letters as a sworn affidavits, the Court must resolve conflicting evidence in Plaintiff's favor at this stage. *See id.* at 800.

Taking the allegations in Plaintiff's complaint as true, the Court finds that Plaintiff has shown that Gardner purposely directed his tortious conduct at a California resident, giving rise to this action. Because asserting jurisdiction would not be unreasonable, the Court finds all three prongs necessary to establish specific jurisdiction over Gardner for the intentional tort claims are met. *See Schwarzenegger*, 374 F.3d at 802.

### 2. Specific Personal Jurisdiction Over Contract Claims

Although Gardner is subject to the Court's jurisdiction for claims arising out of his alleged tortious conduct, Plaintiff also brings claims against Gardner personally for disputes arising out of the License Agreement. For these claims, Gardner argues that the Court lacks personal jurisdiction over him because he did not enter into any agreement or addendum in his individual capacity. (Mot. at 1 ("I do not consider that this case can proceed against me in a personal capacity, as I have only ever interacted with Platypus [W]ear Inc. in a capacity as an agent/representative

of a limited company.").) The Court construes Gardner's objection as arguing that he is protected under the fiduciary shield doctrine. *See Bernhardt*, 339 F.3d at 925 (explaining that courts have a duty to construe pro se motions liberally).

Plaintiff argues that Gardner is subject to the Court's jurisdiction for actions arising out of Plaintiff's agreements with BBE and Deep Blue Sports because Gardner is the alter ego of these companies, which explicitly consented to jurisdiction in California. (Opp'n at 12.) Plaintiff's alter ego argument is as follows: (1) the Court has personal jurisdiction over Deep Blue Sports and BBE by virtue of their contractual consent, and (2) the fiduciary shield doctrine does not protect Gardner because (3) Gardner is an alter ego of the companies, which justifies piercing the corporate veil and asserting jurisdiction over Garnder. The Court addresses each issue—consent, fiduciary shield doctrine, and alter ego liability to pierce the corporate veil—in turn.

### a. Consent to Personal Jurisdiction

Plaintiff alleges that BBE and Deep Blue Sports consented to personal jurisdiction in their license agreements with Plaintiff. (Opp'n at 12 ("[T]he parties agree to the non-exclusive jurisdiction of the Courts of San Diego County in California.").)

Personal jurisdiction is a waivable right, and a party may give "express or implied consent to the personal jurisdiction of the court." *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 703 (1982). For example, parties may stipulate in advance to litigate any possible controversies within a particular jurisdiction. *See Doe*, 248 F.3d at 922 ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court." (quoting *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)). Ultimately, where such an agreement has been freely negotiated and is not "unreasonable or unjust," its enforcement does not offend due process. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

At this stage, the Court finds that BBE and Deep Blue Sports agreed to the non-exclusive jurisdiction of San Diego Courts. There is no evidence that the License Agreement was not freely negotiated, and thus enforcement of the forum selection clause does not offend due process. *See M/S Bremen*, 407 U.S. at 15. Based on this express consent, BBE and Deep Blue Sports are subject to the Court's personal jurisdiction for actions arising out of their agreements with Plaintiff. *See Ins. Corp. of Ir., Ltd.*, 456 U.S. at 703.

### b. Fiduciary Shield Doctrine

Next, the Court construes Gardner as asserting the fiduciary shield doctrine as the basis of his argument that the Court cannot assert jurisdiction over him for injuries caused by Deep Blue Sports and BBE. Gardner may seek protection under the fiduciary shield doctrine because Plaintiff seeks to hold Gardner liable for Deep Blue Sports's and BBE's contract breaches, though he was not individually a party to the agreements at issue.

Under the fiduciary shield doctrine, "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir 1989). Although, it may be true that "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers . . . are suable locally as well," *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999), ultimately, the fiduciary shield doctrine does not apply where there is "reason for the court to disregard the corporate form." *Davis*, 885 F.2d at 520; *see, e.g.*, *Dish Network L.L.C. v. Vicxon Corp.*, 923 F. Supp. 2d 1259, 1264 (S.D. Cal. 2013) (finding the fiduciary shield doctrine does not protect an officer who acted as the "moving force" behind corporation's alleged copyright-infringing activity).

The Court's jurisdiction over BBE and Deep Blue Sports does not automatically establish jurisdiction over Gardner for the same injuries under the fiduciary shield doctrine. *See Colt Studio*, 75 F. Supp. 2d at 1111. Instead, to find jurisdiction over Gardner for actions taken in his official capacity, the Court needs grounds to "pierce the corporate veil." *See Davis*, 885 F.2d at 520 ("Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional contexts parallel to those used in liability contexts."). Thus, the Court must now determine whether it has sufficient grounds to pierce the corporate veil of Deep Blue and BBE, and hold that jurisdiction over the companies establishes jurisdiction over Gardner individually.

### c. Alter Ego and Piercing the Corporate Veil

Plaintiff argues that, because Gardner is the alter ego of BBE and Deep Blue Sports, the Court may disregard the corporate form, or "pierce the corporate veil," and find that the companies' consent to jurisdiction is a basis for personal jurisdiction over Gardner. (Opp'n at 12.) Gardner, on the other hand, argues that "[Plaintiff] [is] attempting to misrepresent[] a number of facts in order to create a false representation of some wrong doing on my behalf in order to support an 'alter ego' argument that has not been proven." (Reply at 1.)

Grounds for piercing the corporate veil include (1) where the corporation is the agent or alter ego of the individual defendant, or (2) where a corporate officer or director authorizes, directs, or participates in tortious conduct. *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985); *Flynn*, 734 F.2d at 1393. Thus, where a corporation is the alter ego of its stockholder, a district court may disregard the corporate form and exercise personal jurisdiction over those individual stockholders. *See Certified Building Products, Inc. v. NLRB*, 528 F.2d 968,

969 (9th Cir. 1975). *Sheard v. Superior Court*, 114 Cal. Rptr. 743, 745 (Cal. Ct. App. 1974).[1]

"To apply the alter ego doctrine, the court must determine (1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice." *Flynn Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984)) (citing *Watson v. Commonwealth Ins. Co.*, 8 Cal. 2d 61, 68 (1936)). Because the facts relating to personal jurisdiction are intertwined with the merits of its claims, a plaintiff need only make a prima facie showing of alter ego liability. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *see also Stuart v. Spademan*, 772 F.2d 1185, 1198, n.12. (5th Cir. 1985) (noting that the alter ego test for personal jurisdiction is less stringent than that for liability).

Plaintiff makes a prima facie showing that there is a unity of interest between Gardner, Deep Blue Sports, and BBE sufficient for alter ego liability. Plaintiff alleges that Gardner was the sole owner, stockholder, and managing director of both Deep Blue Sports and BBE. In addition, the two companies share the same office and employees, operate the same type of business, and Gardner freely transferred assets between them. (Compl. ¶ 74.) Plaintiff also alleges that BBE sold products on a website registered to Deep Blue Sports and Gardner. (*Id.*) Finally, Plaintiff alleged that Deep Blue Sports and BBE failed to observe corporate formalities, that BBE was so undercapitalized that it was illusory, and that BBE was a mere shell company without capital, assets, or stock, and was used a device to avoid liability. (*Id.*) The Court finds that these allegations demonstrate a unity of interest between Gardner, Deep Blue Sports, and BBE. *See Flynn*, 734 F.2d at 1393. Thus, Plaintiff establishes

---

[1] California law analyzing personal jurisdiction is appropriate because Rule 4(k)(1)(a) allows personal jurisdiction over defendants "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

a prima facie showing that separate personalities of the companies and Gardner do not exist, and rather they are alter egos.

Plaintiff also makes a prima facie showing that failure to find alter ego liability would result in injustice. Because Plaintiff alleges that Gardner engaged in asset stripping and using BBE as a device to avoid liability, failure to find alter ego would allow Gardner to succeed in his alleged fraudulent scheme to avoid liability. Gardner allegedly placed BBE's assets in Deep Blue Sports's name, and simultaneously negotiated with Plaintiff to release Deep Blue Sports from liability for its past debts without disclosing the asset transfer to Plaintiff. (Compl. ¶ 74.) Plaintiff remained under the impression that BBE was adequately capitalized to operate as a business and maintain a prosperous relationship. (*Id.*) Based on these allegations, Gardner may be liable for Deep Blue Sports and BBE's contract breach and subsequent debts, especially if he caused BBE's insolvency to the detriment of its creditors, like Plaintiff. If the allegations against Gardner, Deep Blue Sports, and BBE prove to be true, then adhering to the fiction of their separate existence would permit an abuse of corporate privilege. As suggested by Plaintiff, it would be inequitable for Gardner to escape liability to Plaintiff by virtue of his fraudulent scheme. And though Gardner contests Plaintiff's claims of fraud and asset stripping (Reply at 1), for jurisdiction, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Unocal*, 248 F.3d at 922. Even construing Gardner's Reply as evidence, the Court resolves these factual conflicts in Platypus's favor. *See Schwarzenegger*, 374 F.3d at 800.

Because Plaintiff made a prima facie showing that Gardner is the alter ego of Deep Blue Sports and BBE, the Court has sufficient grounds to disregard the corporate form, or pierce the corporate veil. *See Transgo, Inc.*, 768 F.2d at 1021. This makes Gardner subject to the Court's jurisdiction for the contract claims because, where alter ego is established so as to justify piercing the corporate veil, the basis for jurisdiction over the corporation supports jurisdiction over the alter ego stockholder.

1 | *See Sheard*, 114 Cal. Rptr. at 745. As discussed above, the Court finds that Deep Blue Sports and BBE are subject to the Court's personal jurisdiction by virtue of their contractual consent. Thus, this basis for personal jurisdiction over Deep Blue Sports and BBE—their consent to jurisdiction—establishes the Court's jurisdiction over Gardner.

In sum, the Court finds that Plaintiff has shown that Gardner is the alter ego of BBE and Deep Blue Sports for the purposes of personal jurisdiction. Because BBE and Deep Blue Sports consented to the Court's jurisdiction in their agreements with Plaintiff, Gardner, as an alter ego, is also subject to the Court's jurisdiction for the actions arising out of these agreements.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Gardner's Motion to Dismiss (ECF No. 38.) The Court **ORDERS** Gardner to file an answer to Plaintiff's complaint **no later than August 30, 2018**. If Gardner fails to file an answer by that date, he will be subject to an entry of default.

Additionally, the Court **DENIES** Plaintiff's Motion to Strike (ECF No. 44).

**IT IS SO ORDERED.**

Dated: August 2, 2018

Hon. Cynthia Bashant
United States District Judge